IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KATHRYN CAMBRON                                              PLAINTIFF

V.                            3:04CV00233 JMM

USABLE LIFE INSURANCE COMPANY                                DEFENDANT

### ORDER

Plaintiff, Kathryn Cambron, seeks judicial review pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, of the decision by the defendant USAble Life Insurance Company ("USAble") denying plaintiff's claim for long term disability benefits under USAble's insurance policy. Pending is plaintiff's motion for summary judgment and USAble's cross-motion for summary judgment on the administrative record. The parties have responded. For the reasons set forth below, the court grants summary judgment for the defendant.

1. *Factual Background*

Plaintiff was a beneficiary under USAble's group long term disability policy at the time of her cessation from work on June 20, 2002. Plaintiff properly submitted a claim for benefits under the policy on June 24, 2002. On March 12, 2003, USAble's claims administrator, Disability RMS, denied plaintiff's claim for long-term disability benefits. (Administrative Record at 490-91, 488) ("AR"). Plaintiff appealed the denial on June 16, 2003. (AR at 83). On November 25, 2003, USAble denied Plaintiff's appeal because "there was no evidence to support any decrease in her functional capacity when she stopped working on June 20, 2002". (AR at 67-69).

Plaintiff worked as a cart technician at St. Bernard's Medical Center. Plaintiff

complained of back and hip pain. Plaintiff's physicians at times noted mild degenerative disc disease and disc herniation as a result of diagnostic tests. Plaintiff reported to doctors that she had fibromyalgia. One of plaintiff's doctors noted that Plaintiff had fibromyalgic-like symptoms. No physician has given an opinion that plaintiff's pain or alleged disabilities are feigned or exaggerated by her, but plaintiff has provided no objective medical evidence that her medical condition prevented her from performing her job.

2. *Discussion*

ERISA provides for judicial review of disability benefit denial decisions. 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that ERISA provides that a denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998). "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." *Chronister v. Baptist Health*, 442 F.3d 648, 654 (8th Cir. 2006) (quoting *Heaser v. Toro Co.*, 247 F.3d 826, 833 (8th Cir. 2001)).

Plaintiff's first argument is that USAble could not delegate its discretionary powers to the Plan administrator, Disability RMS. The Plan includes the following language concerning USAble's discretionary authority:

> USAble Life shall have authority and full discretion to determine all questions arising in connection with the Plan benefits, including but not limited to eligibility, beneficiaries, interpretation of Plan language, and findings of fact with

2

> regard to any such questions. The actions, determinations, and interpretations of USAble Life with respect to all such matters shall be conclusive and binding. This means that should there be any question concerning how the plan applies:
>
> 1. To any claim for benefits;
> 2. Concerning an employee's eligibility for Plan benefits;
> 3. Concerning the determination of beneficiaries; or
> 4. To any other question or issue, whether one of fact or one of Plan interpretation;
>
> USAble Life is deemed to have the exclusive right and authority to resolve all such questions in the exercise of USAble Life's sole discretion. (AR at 53).

Plaintiff argues that the plan does not provide for the utilization of a plan administrator such as Disability RMS and, therefore, Disability RMS does not have the discretion to review claims. Disability RMS initially reviewed the claim and denied it on March 12, 2003. USAble then reviewed the claim and exercised it's discretion in denying the claim and plaintiff's appeal from which this case arises. The court finds plaintiff's argument without merit. The ability to delegate the initial review is assumed because of USAble's "exclusive right and authority". The issue is not whether USAble had discretionary authority, but whether USAble could contract out a review of a claim for benefits through an agent such as Disability RMS. Plaintiff has cited no cases to the contrary. The court finds that USAble had discretionary authority to determine plaintiff's eligibility for benefits.

For the less deferential standard to apply, plaintiff must present material and probative evidence (1) that USAble had a palpable conflict of interest or committed serious procedural errors which (2) caused a serious breach of the plan administrator's fiduciary duty to her. *Woo*, 144 F.3d at 1160; *see also, Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 806 (8th Cir. 2002). To satisfy the second part of this requirement, plaintiff must only show that the conflict or procedural irregularity has "some connection to the substantive decision reached."

3

*Woo*, 144 F.3d at 1161 (quoting *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996)). Unless a beneficiary can offer material, probative evidence that gives rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim," we will apply the traditional abuse of discretion standard to discretionary trustee decisions. *Layes v. Mead Corp.* 132 F.3d 1246, 1250 (8th Cir. 1998) (citation omitted).

Plaintiff argues that if the court finds USAble had discretionary authority, a less deferential standard of review is required. Plaintiff alleges USAble controlled the review from beginning to end, presenting an economic conflict, and that USAble's reviewing physician was not a specialist, which posed a procedural error. The Eighth Circuit Court of Appeals here ruled:

> ERISA specifically contemplates the utilization of fiduciaries that may not be entirely neutral. *See* 29 U.S.C. § 1108(c)(3) (providing that employers may appoint their employees to serve as plan fiduciaries, despite the employer's status as a "party in interest"); 29 C.F.R. § 2560.503-1(g)(2) (providing that an insurance company may review and decide upon denied benefit claims after making the initial denial). Accordingly, not every allegation of impartiality alters the standard of review.

*Farley v. Arkansas Blue Cross and Blue Shield*, 147 F.3d 774, 776 (8th Cir.1998).

The Eighth Circuit Court of Appeals has indicated that "it is wrong to assume a financial conflict of interest from the fact that a plan administrator is also the insurer." *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1030 (8th Cir.2000). The Eighth Circuit has not "create[d] a blanket rule mandating de novo review in all cases where the insurer of a health benefits plan is also the plan administrator. Rather, [they] held that the inquiry is fact specific and limited to instances where the relationship places the ERISA benefits plan administrator in a "perpetual" conflict of interest." *Davolt v. Executive Committee of O'Reilly Automotive*, 206 F.3d 806, 809-

10 (8th Cir. 2000). (holding the district court erred by finding an automatic conflict of interest merely because insurer and administrator were the same). "The deferential abuse of discretion standard of review applies 'unless the beneficiary comes forward with evidence establishing that the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment.'" *Sahulka v. Lucent Technologies, Inc.*, 206 F.3d 763, 768 (8th Cir. 2000) (quoting *Wald v. Southwestern Bell Customcare Med. Plan*, 83 F.3d 1002, 1007 (8th Cir.1996)) (citation omitted).

When the insurer is also the plan administrator the Eighth Circuit has "recognized something akin to a rebuttable presumption of a palpable conflict of interest." *Shatz v. Mutual of Omaha,* 220 F.3d 944, 947-48 (8th Cir. 2000); *see Barnhart v. UNUM Life Ins. Co.*, 179 F.3d 583, 587-88 (8th Cir. 1999). As in *Schatz*, plaintiff makes no showing of any actual bias or conflict of interest such as incentives and bonuses to claims adjustors for denying claims. *See Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1265 (8th Cir. 1997) (claims adjustors were offered incentives and bonuses to deny claims). In *Farley*, the Eighth circuit recognized that insurers have "compelling long-term business concerns that encourage them to make benefit determinations in a fair and consistent manner, thus negating any indicia of bias." *Farley,* 147 F.3d at 777. "In the long run, an insurer that routinely denies valid claims for benefits would have difficulty retaining current customers and attracting new business. *Id.* However, in *Schatz*, the Eighth Circuit concluded that when there is a structural and financial conflict of interest with a defendant like USAble, where it is the insurer and plan administrator, and has not articulated any ameliorating circumstances to overcome the bias, the plan administrator was operating under a palpable conflict of interest. *Schatz,* 220 F.3d at 948.

5

In comparing these cases, it is unclear under Eighth Circuit law whether the plaintiff has the burden of producing actual evidence of a financial conflict, or whether the defendant, after the plaintiff has alleged that the defendant is both the insurer and the administrator, has the burden of producing evidence to rebut the presumption of a conflict of interest. *Compare McGarrah*, 234 F.3d at 1030, *with Schatz*, 220 F.3d at 947-48, *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 795 (8th Cir. 2002), and *Torres v. UNUM Life Ins. Co.*, 405 F.3d 670, 678 (8th Cir.2005). Here, plaintiff makes a bare allegation of a financial conflict based on USAble's dual role as both insurer and administrator, but has provided no evidence that this dual role influenced USAble's decision to deny plaintiff's long-term disability benefits. On the other hand, USAble has produced no evidence to directly rebut plaintiff's claim of a financial conflict, therefore, on the summary judgment record before it, the court cannot conclude that USAble's dual role did not influence its decision in this case or created a palpable conflict of interest. Even if the court were to assume, without deciding that a palpable conflict of interest existed, "*Woo's* second prong presents a considerable hurdle for plaintiffs." *Schatz*, 220 F.3d at 948 (quoting *Barnhart, 179* F.3d at 589 n. 9).

The existence of a palpable conflict of interest does not mean that the court will apply a less deferential standard of review. The evidence offered by the claimant must give rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Schatz, 220 F.3d* at 948 (quoting *Barnhart,* 179 F.3d at 589). USAble's consideration of extensive medical evidence in making its decision to terminate plaintiff's long-term disability benefits, USAble's review of plaintiff's pre-injury medical records by Dr. Abbott, as well as USAble's request for more medical proof or an opinion before making

6

its decision dissipate the allegations of a conflict of interest. Finally, plaintiff has failed to show that the USAble's assumed financial conflict had "a connection to the Plan administrator's ultimate decision". *Sahulka,* 206 F.3d at 768.

Plaintiff contends that she is entitled to a less deferential review because there was a procedural irregularity as USAble did not a consult anyone with appropriate training and experience in the field of medicine involved in the medical judgment as required by 29 C.F.R. § 2560.503-1(h)(3)(iii) as incorporated by 29 C.F.R. § 2560.503-1(h)(4), because Dr. Abbott is a general practitioner. In *Woo,* the Eighth Circuit held that where the plaintiff's two treating physicians declared that plaintiff was disabled and had been for some time, and the plan administrator's in-house physician denied benefits, the defendant failed to use "proper judgment" by not having a specialist review the claim when the claimant was afflicted with an uncommon disease. *Woo,* 144 F.3d at 1161. In *Heaser,* 247 F.3d at 833, the court found that even though the defendant did not consult with a doctor with expertise relating to plaintiff's condition, defendant thoroughly investigated the claim as opposed to the defendant in *Woo,* where benefits were denied "without reflection and judgment". With facts very similar to the instant case, the court in *Clapp v. Citibank,* 262 F.3d 820, 827 (8th Cir. 2001) ruled against the plaintiff who argued that in "light of evidence of 'multiple ailments, including substantial cardiac impairment' and the 'uncommon disease of fibromyalgia, along with opinions of two treating physicians that Plaintiff was disabled'. . . . Aetna's failure to have either a cardiologist or rheumatologist review her claim demonstrated improper judgment which constituted a procedural irregularity under *Woo* ".[1]

---

[1] Fibromyalgia is defined as: A syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rhuematology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as an axial

The medical records reflect that: on June 12, 2002, Dr. Bice noted "degenerative changes" related to the pelvis and hips from an MRI. (AR at 88). Dr. Bice said there was mild bulging in the L3-L4 and mild diffuse bulging in the L4-L5 and some central disc herniation in the L5-S1. (AR at 89). This was the only objective testing in the record related to the June 2002 injury or any time afterward. In Dr. Plunk's office note of June 20, 2002, reads, "all arthritis tests : neg. . .back pain". (AR at 217) On June 27, 2002, Dr. Plunk noted "Fibromyalgia, degenerative disc disease, and central disc herniation." (AR at 216). Dr. Plunk's notes do not state on what he based his opinions but he had ordered the MRI's that Dr. Bice read. Later in June 2002, Dr. Plunk notes that plaintiff "wants to talk about fibromyalgia", "pressure pain", "joint pain in hips". (AR at 217). On July 11, 2002, when plaintiff and Dr. Plunk discuss whether she's ready to return to work he notes "she really doesn't think so". (AR at 216). Six weeks passed and plaintiff told Dr. Plunk that she "needs a new work excuse for the whole month of September." (AR at 216). There is no evidence in the record that Dr. Plunk performed any type of evaluation to determine plaintiff's functional capabilities or limitations during this period. On October 1, 2002, plaintiff is "still aching, still hurting". (AR at 215). There is no mention of pain in his notes from October of 2002 until June 11, 2003, when plaintiff complained of "headaches and persistent cough". There is no record that plaintiff saw any specialists after she quit working in June, 2002.

Plaintiff's attorney requested an opinion from a vocational consultant, Robert Violetta, of Brookline, Massachusetts, to determine what her occupation was rated. In a letter to Disability

---

distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specific sites.

Stedman's Medical Dictionary at 671 (27th ed.2000).

RMS, Mr. Violetta said it was considered "light work". Violetta said her prior job as a cart technician exceed light exertion but as it exists in the general economy requires light exertion. (AR at 349). Plaintiff's attorney also sought an opinion from a vocational consultant, Wm. David Elmore with VOC Services. Mr. Elmore reviewed plaintiff's records and noted that "the physician's chart does not contain detailed comprehensive information regarding each of the dozens of specific functional ability, but the intent and assessment are quite clear in that the client is incapable of full time work and is not released to full time work". (AR at 358-359). Mr. Elmore interviewed plaintiff by phone and she relayed her subjective complaints. If further documentation is needed, Mr. Elmore suggests the physician could be sent a comprehensive physical ability or functional capacity type form. (AR at 359). Based on the subjective evidence he had to review, Mr. Elmore noted that "employability appears poor". *Id.*

Plaintiff received physical therapy at American Physical Therapy Center. (AR at 384). On June 26, 2002, she said she had "pain is intermittent type in her arm". Plaintiff complained of left shoulder and lower back pain. *Id.* On June 28, 2002, there was no mention of pain. Id. On July 11, 2002, therapy notes showed "marked improvement in walking distance". *Id.* This was the last therapy note in the record. Her short term goal was 100% compliance with her program. Her long-term goal was "[t]o be able to return to gainful employment without shoulder or back pain. (AR at 387). Her "rehabilitation potential was good". *Id.*

On July 2, 2002, Dr. Plunk said plaintiff's return to work was "undetermined". (AR at 274). Dr. Plunk submitted an "Update Form Short Term Disability" on August 12, 2002, stating plaintiff had a diagnosis of back, hip, shoulder pain and fibromyalgia; her date to return to work was "unknown at this point". (AR at 322) On September 10, 2002, on the same type form Dr.

9

Plunk stated her diagnosis was back, hip, and shoulder pain with central disc herniation and fibromyalgia. (AR at 321). On the October 17, 2002 report Plunk noted plaintiff's return to work was "questionable if ever" with a diagnosis of back, shoulder, and neck pain; he restricted her from ever pushing or pulling heavy objects. (AR at 320) On the "Attending Physician's Statement Form", dated November 18, 2004, Dr. Plunk states that plaintiff's condition is unchanged with back, neck and hip pain with a functional capacity of "complete limitation". (AR at 317). Most absent from Dr. Plunk's records is any attempt to assess or quantify plaintiff's functional limitations. (AR at 213-219).

A nurse reviewer requested objective or other medical data from Dr. Plunk to support any decrease in plaintiff's functional capacity by letter dated February 19, 2003. (AR at 486). On March 7, 2003, Dr. Plunk responded that he reviewed plaintiff's case but that he had provided all the records he had from June 20, 2002 to the present. (AR at 491). By letter to plaintiff dated March 12, 2003, Disability RMS wrote:

> The records from Dr. Plunk do not have a detailed medical history of clinical exam findings to suggest that you currently have a decrease in your functional capacity due to fibromyalgia. We do not have the records regarding how the diagnosis of fibromyalgia was determined; however, in the recent medical data from Dr. Plunk, there is no assessment of tender points to suggest you were having a flare up of fibromyalgia. In fact, there is no physical or neurological exams in ay of the medical records from Dr. Plunk to substantiate any abnormalities or impairment related to fibromyalgia, only what appears to be discussions of your symptoms and medication prescriptions. (AR at 491).

The letter went on to inform plaintiff Disability RMS found no objective evidence to support her disability and she could request re-evaluation by appealing to USAble. In November 2003, Plaintiff's claim was sent to Dr. Abbott for review. From the detail in Dr. Abbott's opinion letter it is clear that he considered all of plaintiff's medical records provided. Dr. Abbott found little in her

10

records to substantiate any impairment, without which it would be impossible to determine what her physical capacity was. (AR at 462).

Plaintiff then submitted additional records, most of which predated her cessation of work. Dr. Abbott then reviewed plaintiff's pre-injury records and although there were complaints about back pain beginning after an injury in 2000 and visits to several doctors, he came to the same conclusion because there was no objective information about the degree of impairment of her functional capacity. (AR at 353).   Some pertinent records are as follows:  Plaintiff was seen by a specialist, Dr. Beata Majewski, a rheumatologist, on February 18, 2002, which was before the injury in June, 2003.  Dr. Majewski noted that plaintiff had "fibormyalgia type symptoms in a patient with a history of depression and chronic insomnia ". (AR at 190).  Dr. Majewski never declared plaintiff as disabled.  The record shows no other visits to Dr. Majewski even though he said he would be "glad" to see her in three to four months. *Id.*  Among other things, Dr. Majewski recommended plaintiff switch to a day job. *Id.*  On February 15, 2002, plaintiff underwent MRIs that were read by Dr. Milton Barrett.  Dr. Barrett noted "minor degenerative narrowing of the C5-C-6 and C6- C7 disc interspaces, a normal lumbar spine, with a diagnosis of "mild degenerative disc disease".  Plaintiff was seen by Dr. Calin Savu, a pain management doctor, at least five times in February and March of  2001 and received injections for pain.  On March 21, 2001, Dr. Savu, recommended steroids, and if not helpful, then physical therapy.  Dr. Savu never addresses plaintiff's diagnosis of fibromyalgia but it is significant that he notes on February 21, 2002, "her range of motion and neurological examination are within the normal limits" (AR at 248) and on March 7, 2002, her "[n]eurological examination reveals equally brisk pulses, normal muscle strength, and normal sensory examination". (AR at 250).

11

Plaintiff never saw a specialist in the field of pain or fibromyalgia after she quit working. Dr. Abbott's letters of November 6, 2003, (AR at 462) and November 13, 2003 (AR at 353) reflect that he thoroughly read plaintiff's medical records. (AR at 460). Dr. Abbott reviewed the records and found no objective evidence and very little subjective evidence noted that any of plaintiff's physicians found her to be disabled. Only one physician, plaintiff's treating general practitioner, found plaintiff to be disabled. In addition, USAble is under no obligation to do an independent medical review in a case where the medical evidence relied upon by plaintiff was on its face insufficient to support a conclusion that she was totally disabled. *Layes*, 132 F.3d at 1251 (holding that plan administrator not required to seek independent medical opinion when medical evidence relied upon by claimant insufficient to support conclusion of disability). As in *Heaser*, plaintiff has not presented evidence that USAble failed to thoroughly investigate her claim or that USAble reached it's decision without reflection or judgment or that is was the product of arbitrariness or whim. *See Heaser*, 247 F.3d at 834. There was no procedural irregularity by USAble in relying on the opinion of the reviewing physician that was not specialist related to her condition. *Clapp*, 262 F.3d at 828. Thus, the court concludes that plaintiff has failed to show a link between USAble relying on the opinion of a reviewing physician that was not a specialist related to her condition and a serious breach of its fiduciary duty. *Woo*, 144 F.3d at 1160.

Even if the court were to assume that the existence of a palpable conflict of interest and serious procedural irregularities does not necessarily mean that the court should apply a less deferential standard of review. *Torres*, 405 F.3d at 679. The court in *Torres* went on to find that to satisfy the second prong of the Woo test, plaintiff must show that USAble not consulting a specialist had "some connection to the substantive decision reached". *Id.* (quoting *Woo*, 144 F.3d

12

at 1160-61). The Eighth Circuit has recognized this as a considerable hurdle for plaintiffs and noted only two cases where the second prong was satisfied. *Torres,* 405 F.3d at 670; *see Barnhart,* 179 F.3d at 589 n.9. The Eighth Circuit, however, realizes "that virtually anything connected to an administrator's denial of benefits could be said to have 'some connection to the substantive decision reached'", and concluded this does not require a less deferential review. *Torres,* 405 F3d. at 680. Because plaintiff has not met the "two-part gateway requirement" the court will not apply a "sliding scale" approach. *Schatz,* 220 F.3d at 947.

In applying an abuse of discretion standard, the reviewing court must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir. 1997) (citation omitted); *see also Ferrari,* 278 F.3d at 807. A reasonable decision is one based on substantial evidence that was actually before the plan administrator. Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz,* 220 F.3d at 949. A reviewing court may consider both the quantity and the quality of evidence before a plan administrator. *Donaho v. FMC Corp.,* 74 F.3d 894, 900 (8th Cir. 1996). If the decision "is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Cash,* 107 F.3d. at 641. A court should not substitute its own judgment for that of the decision maker when the Plan grants discretionary authority. *Dillard's Inc. v. Liberty Life Assur. Co. of Boston,* 456 F.3d 894, (8th Cir. 2006).

"The evidence a plan administrator may require to prove disability benefit claims depends on the terms of the plan and the circumstances of the case." *Johnson v. Metropolitan Life Ins. Co.* 437 F.3d 809 (8th Cir. 2006) *(quoting, Pralutsky v. Metroplitan Life Insurance Company,* 435 F.3d

13

833, 838-39 (8th Cir. 2006)) (quotation omitted). "Generally, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 925 (8th Cir.2004); *accord Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir.2005) (per curiam). The plan in this case states that the claimant must provide "proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician . . . . The benefit will be paid for the period of disability if the insured gives to the company proof of continued: 1. disability, and 2. regular attendance of a physician. The proof must be given upon request and at the insured's expense." (AR at 12). In Sec.6 of the General Policy Provisions of the Plan, "[p]roof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for poof. d. The proof must cover . . . iii. The degree of disability. . . . . When the Company receives satisfactory proof of claim, benefits payable under this policy will be paid . . . ". (AR at 27). The plan does not define "satisfactory proof" sufficient to establish a disability, but USAble is entitled to define those ambiguous terms as long as it is reasonable. *Pralutsky*, 435 F.3d at 839. As in *Johnson*, this language resembles the terms of the plan at issue in *Pralutsky*, in which the Eighth Circuit held that "it was reasonable for the administrator to interpret the plan to require objective evidence as part of the proof and documentation that a claimant was required to submit". *Johnson*, 437 F.3d at 813. *Cf. House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001) (determining that the terms of the plan in question did not support the administrator's demand for objective medical evidence where plan reserved the right to demand a medical exam or written proof both of which claimant had provided).

14

Case 3:04-cv-00233-JMM  Document 26  Filed 05/10/07  Page 15 of 17

In some circumstances the Eighth Circuit has said that a plan administrator's insistence on objective medical evidence can be unreasonable as when it cannot be obtained or the administrator does not provide an adequate explanation of the information sought. *Pralutsky*, 435 F.3d at 839. Plaintiff argues that she cannot proffer objective evidence of fibromyalgia because it is an elusive disease. Plaintiff points the court to a case where the Seventh Circuit reversed a denial of benefits based on fibromyalgia, but in that case the claimant provided proof that he had 14 of 18 points of tenderness where it takes only 11 points to be diagnosed with fibromyalgia. *Hawkins v. First Union Corporation Long -Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). In this case, USAble, through Disability RMS, specifically told plaintiff what objective evidence it sought when it noted the absence of a "trigger point test". (AR at 491). In *Brosnahan v. Barnhart*, 336 F.3d 671 (8th Cir. 2003), the Eight Circuit "noted that trigger-point findings consistent with fribromyalgia constitute objective evidence of the disease". *Johnson*, 437 F.3d at 814. Plaintiff could have provided this objective evidence but the record does not indicate that any of her physicians performed the 18 trigger- point test and it was not unreasonable for USAble to request it according to *Johnson*. *Id.* at 814.

USAble also asked for objective evidence of plaintiff's functional disability and plaintiff provided no objective proof. The only objective proof of plaintiff's functional abilities in the record was by Dr. Savu in early 2001 where he noted plaintiff's range of motion, muscle strength and neurological examinations were within normal limits. (AR at 248-250). The court in *Johnson* found:

> In *Pralutsky*, we determined that the plan administrator could require objective evidence of a disability, even when the claimant's alleged disability stemmed from fibromyalgia, so long as the administrator notified the claimant that her file lacked the required objective evidence. *See id.* 435 F.3d at 838-40. Here, when MetLife first

15

>denied Johnson's claim for long-term disability benefits, it informed her that the evidence in her file did not support a condition that was so significant or severe that it would preclude her from performing her job. Taking into account this notification, MetLife was reasonable in requiring some objective evidence of Johnson's disability.

*Id* at 813. Likewise, Disability RMS informed plaintiff her records did not support her claim for long-term disability benefits.

Plaintiff also argues that the court should consider that she has been awarded social security disability benefits. An ERISA plan administrator is not bound by a Social Security Administration determination that a plan participant is disabled. *Jackson*, 303 F.3d 884, 889 (8th Cir. 2002). In addition, the court finds plaintiff's assertion that she did not receive a full and fair review without merit. The record indicates that Disability RMS and USAble's reviewing physician thoroughly reviewed plaintiff's medical records and the review was not selective or inefficient. *See Abraham v. Cargill, Inc.*, 395 F.3d 882 (8th Cir. 2005). Plaintiff was given opportunities to correct any deficiencies. *See Wolfe v. J.C. Penney*, 710 F.2d 388 (7th Cir. 1983).

The Eighth Circuit has held that USAble is entitled to rely on the opinions of reviewing physicians who give contrary opinions unless the record does not support denial. *Dillards*, 456 F3d. at 89; *see also Hunt*, 425 F.3d 489. "The "treating physician rule" -that opinions of treating physicians must be accorded special weight-does not apply to disability benefit determinations under plans governed by ERISA. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)." The evidence before USAble's reviewing physician after plaintiff's cessation of work was limited to office notes by one general practitioner listing subjective complaints; reports from physical therapy that ruled her rehabilitation potential as "good" at her final session; objective evidence of mild degenerative disc disease and disc bulging;

16

an opinion of a vocational rehabilitation expert who based his opinion on subjective evidence and suggested that a functional ability test could be done; subjective complaints of pain by the patient; and no objective assessment of plaintiff's functional abilities. The reviewing physician had pre-cessation of work records to consider that included: a diagnosis of fibromyalgia unsupported by an 18 trigger- point test; an assessment of neurological function from plaintiff's pain specialist noting her range of motion, strength, sensory and neurological examination were in the normal limits; and, no finding of disability by any doctors. Disability RMS requested objective evidence of plaintiff's functional abilities as well as her fibromyalgia.. The only response Disability RMS received was that he had no more records.

In *Pralusky*, the court reasoned that "[i]n view of a plan administrator's obligation to protect the plan's trust property by ensuring that disability claims are substantiated, it was not unreasonable for the administrator to require clinical documentation of the sort requested here". *Pralusky*, 435 F.3d at 841. The court concludes that plaintiff failed to prove she was disabled under the plan. *See Id*. (citation omitted).

For these reasons, plaintiff's motion for summary judgment is denied (docket #10) and defendant's cross-motion for summary judgment is granted (docket #20).

IT IS SO ORDERED this 10th day of May, 2007.

James M. Moody
United States District Judge